IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

| | |
|---|---|
| AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>v.<br><br>AMERICAN ALTERNATIVE INSURANCE CORPORATION; and REPUBLIC SERVICES, INC.,<br><br>    Defendants. | Case No. _____<br><br><br><br>**COMPLAINT** |

Plaintiff American Guarantee and Liability Insurance Company ("American Guarantee"), pursuant to 28 U.S.C. §§ 2201 and 2202 and Federal Rules of Civil Procedure 8(a) and 57, hereby sues Defendants American Alternative Insurance Corporation ("AAIC") and Republic Services, Inc. ("Republic") and alleges:

## PARTIES

1. American Guarantee is an insurance company and a corporation organized under the laws of the State of New York with its principal place of business in the State of Illinois.

2. AAIC is an insurance company and a corporation organized under the laws of the State of Delaware with its principal place of business in the State of New Jersey.

3. Republic is a corporation organized under the laws of the State of Delaware with its principal place of business in Fort Lauderdale, Broward County, State of Florida.

## JURISDICTION AND VENUE

4. The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1) because complete diversity exists between American Guarantee and Defendants and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claims for relief occurred in this district.

## FACTUAL BACKGROUND

### I. The Policies

6.      Republic and its subsidiaries (collectively, "Republic") provide solid waste collection, transfer, disposal, and recycling services for commercial, industrial, municipal, and residential customers in forty states and Puerto Rico.

7.      Pacific Employers Insurance Company, a subsidiary of ACE American Insurance Company ("ACE"), issued Republic a Business Auto Policy, number ISA H07970341, for the policy period June 30, 2001 to November 1, 2002 ("Pacific Primary Policy").

8.      The policy period of the Pacific Primary Policy was extended to November 1, 2003.

9.      ACE issued Republic a Business Auto Policy, number ISA H07978046, for the policy period November 1, 2003 to November 1, 2004 ("ACE Primary Policy").

10.     The ACE Primary Policy, which was a renewal of the Pacific Primary Policy, provides liability coverage for covered autos subject to an each accident/loss limit of $2 million.

11.     The liability coverage provided by the ACE Primary Policy is not subject to a general aggregate limit.

12.     AAIC issued Republic a Commercial Umbrella Policy, number 01-A2-UM-0000220-02, for the policy period June 30, 2001 to November 1, 2004 ("AAIC Umbrella Policy").

13. The AAIC Umbrella Policy provides excess follow form liability and umbrella coverage subject to a $3 million per occurrence and general aggregate limit.

14. The Schedule of Underlying Insurance for the AAIC Umbrella Policy identifies the Pacific Primary Policy as providing the underlying automobile liability coverage.

15. In accordance with Section V.I. of the AAIC Umbrella Policy, Republic maintained the underlying automobile liability insurance coverage provided by the Pacific Primary Policy by obtaining the ACE Primary Policy.

16. Pursuant to Section II.C. of the AAIC Umbrella Policy, the $3 million general aggregate limit does not apply to "coverages included in the Scheduled Underlying Policy(ies) to which no underlying aggregate(s) applies."

17. Because the automobile liability coverage provided by the ACE Primary Policy is not subject to a general aggregate limit, the AAIC Umbrella Policy's $3 million general aggregate limit does not apply to automobile liability coverage.

18. American Guarantee issued Republic a Following Form Excess Liability Policy, number AEC 9305581 02, for the policy period November 1, 2003 to November 1, 2004 ("American Guarantee Excess Policy").

19. The American Guarantee Excess Policy provides excess liability coverage subject to a $25 million per occurrence and other aggregate limit above the AAIC Umbrella Policy.

20. Pursuant to Section I.B. of the American Guarantee Excess Policy, the coverage afforded by the American Guarantee Excess Policy "follows the definitions, terms, conditions, limitations, and exclusions of the" AAIC Umbrella Policy "[e]xcept as otherwise provided."

21. Pursuant to Section I.B. of the American Guarantee Excess Policy, the coverage afforded by the American Guarantee Excess Policy is subject to Section V.K. of the AAIC Umbrella Policy, which states:

> Our Right To Recover Payment
>
> Any persons or organizations for whom we make a payment under this insurance must transfer to us their right to recovery against any other party.

22. Section V.B. of the American Guarantee Excess Policy provides:

> In the event of [the] ... refusal ... to pay of any underlying insurer, the insurance afforded by this policy will not replace such underlying insurance, but will apply as if all the limits of any underlying insurance is fully available and collectible.

## II. Underlying Claims

### A. Reese Claim

23. In Clark County, Nevada on August 13, 2004, a motor vehicle owned by Republic and operated by Juan Lopez, an employee of Republic, collided with a motor vehicle owned and operated by Raymond Reese.

24. On December 2, 2005, Reese and his wife filed a complaint against Lopez and Republic in the Clark County, Nevada District Court, Case No. 05A513986, seeking damages arising out of injuries Reese sustained as a result of the August 13, 2004 accident ("Reese Claim").

25. In March 2008, the Reese Claim was resolved through settlement in an amount that exceeded the ACE Primary Policy's $2 million each accident limit and the AAIC Umbrella Policy's $3 million per occurrence limit.

26. AAIC contributed $1,539,166.28 of its $3 million per occurrence limit toward the settlement of the Reese Claim, asserting such payment exhausted its $3 million general aggregate limit.

27. On March 24, 2008, American Guarantee demanded AAIC contribute its entire $3 million per occurrence limit toward the settlement of the Reese Claim, which AAIC refused to do.

28. As a result of AAIC's wrongful refusal to contribute its full $3 million per occurrence limit toward the settlement of the Reese Claim, American Guarantee contributed the remaining balance of the settlement, which included the $1,460,833.72 AAIC refused to contribute to the settlement.

29. American Guarantee's contribution of the $1,460,833.72 AAIC refused to contribute to the settlement of the Reese Claim was made subject to a complete reservation of rights, including the right to recover such contribution from AAIC.

### B. Goulding Claim

30. In Clark County, Nevada on October 14, 2004, a motor vehicle owned by Republic and operated by William Stewart, an employee of Republic, collided with a motor vehicle operated by Franklin Goulding.

31. On October 4, 2005, Goulding filed a complaint against Stewart and Republic in the Clark County, Nevada District Court, Case No. 05A511081, seeking damages arising out of injuries Goulding sustained as a result of the October 14, 2004 accident ("Goulding Claim").

32. On March 10, 2008, a jury returned a verdict in favor of Goulding in the amount of $4,423,614, which exceeded the ACE Primary Policy's $2 million each accident limit.

33. On June 5, 2008 Republic negotiated a settlement of the Goulding Claim in the amount of $3.5 million.

34. AAIC refused to contribute to the settlement of the Goulding Claim.

35. As a result of AAIC's wrongful refusal to contribute any amount toward the settlement of the Goulding Claim, American Guarantee contributed $1.5 million toward the settlement.

36. American Guarantee's contribution of the $1.5 million AAIC refused to contribute to the settlement of the Goulding Claim was made subject to a complete reservation of rights, including the right to recover such contribution from AAIC.

## C. James Claim

37. In Spalding County, Georgia on February 10, 2004, a motor vehicle operated by Weneka James collided with another motor vehicle while James was attempting to avoid a collision with a disabled motor vehicle owned by Republic and operated by Lonnie Lovett, an employee of Republic, that was blocking traffic.

38. James' motor vehicle also struck Republic's motor vehicle.

39. James and her son filed a complaint against Republic seeking damages arising out of injuries they sustained as a result of the February 10, 2004 accident ("James Claim").

40. Republic reported the James Claim to American Guarantee as potentially involving damages in excess of the ACE Primary Policy's $2 million each accident limit.

41. American Guarantee has reserved its right to deny coverage for the James Claim, in part, based on the potential applicability of Section V.B. of the American Guarantee Excess Policy, which states that in the event of AAIC's refusal to pay, the insurance afforded by the

American Guarantee Excess Policy "will not replace [AAIC's] underlying insurance, but will apply as if all the limits of [AAIC's] underlying insurance is fully available and collectible."

### D. New Claim

42. In Dallas County, Texas on August 9, 2004, a motor vehicle owned by Republic and operated by Mark Harris, an employee of Republic, collided with a motorcycle operated by Stephen New.

43. New passed away on August 22, 2004 as a result of injuries he sustained in the August 9, 2004 accident.

44. On May 16, 2006, Meagan New, Angela New, Alan New, and Trevor New filed a complaint against Harris and Republic in the Navarro County, Texas District Court, Case No. 06-15248-CV ("New Claim").

45. Republic reported the New Claim to American Guarantee as potentially involving damages in excess of the ACE Primary Policy's $2 million each accident limit.

46. American Guarantee has reserved its right to deny coverage for the New Claim, in part, based on the potential applicability of Section V.B. of the American Guarantee Excess Policy, which states that in the event of AAIC's refusal to pay, the insurance afforded by the American Guarantee Excess Policy "will not replace [AAIC's] underlying insurance, but will apply as if all the limits of [AAIC's] underlying insurance is fully available and collectible."

### E. Thorton Claim

47. On January 2, 2004, a motor vehicle operated by William Thorton collided with a motor vehicle owned by Republic.

48. Thorton filed a complaint against Republic seeking damages arising out of injuries allegedly sustained as a result of the January 2, 2004 accident ("Thorton Claim").

49. Republic reported the Thorton Claim to American Guarantee as potentially involving damages in excess of the ACE Primary Policy's $2 million each accident limit.

50. American Guarantee has reserved its right to deny coverage for the Thorton Claim, in part, based on the potential applicability of Section V.B. of the American Guarantee Excess Policy, which states that in the event of AAIC's refusal to pay, the insurance afforded by the American Guarantee Excess Policy "will not replace [AAIC's] underlying insurance, but will apply as if all the limits of [AAIC's] underlying insurance is fully available and collectible."

### F. Kleparek Claim

51. In Hillsborough County, Florida on July 23, 2004, a motor vehicle owned by Republic and operated by Keith Kleparek, an employee of Republic, ignited and burst into flames.

52. Kleparek suffered extensive burn injuries as a result of the July 23, 2004 fire.

53. On August 28, 2006, Kleparek filed a complaint against Republic, seeking damages arising out of injuries sustained as a result of the July 23, 2004 fire ("Kleparek Claim").

54. Republic reported the Kleparek Claim to American Guarantee as potentially involving damages in excess of the ACE Primary Policy's $2 million each accident limit.

55. In the event the Kleparek Claim exceeds the ACE Primary Policy's $2 million each accident limit and AAIC refuses to pay any amount of its $3 million per occurrence limit, Section V.B. of the American Guarantee Excess Policy would potentially apply.

### FIRST CLAIM FOR RELIEF
### (Declaratory Relief – The AAIC Umbrella Policy's $3 Million General Aggregate Limit Does Not Apply to Automobile Liability Coverage)

56. American Guarantee incorporates and realleges paragraphs 1 through 55 as if fully set forth herein.

57.   Pursuant to Section II.C. of the AAIC Umbrella Policy, the AAIC Umbrella Policy's $3 million general aggregate limit does not apply to "coverages included in the Scheduled Underlying Policy(ies) to which no underlying aggregate(s) applies."

58.   The AAIC Umbrella Policy's Scheduled Underlying Policies include the ACE Primary Policy to which no underlying aggregate applies.

59.   Despite the fact that no underlying aggregate applies to the automobile liability coverage afforded by the ACE Primary Policy, AAIC refused to contribute its entire $3 million per occurrence limit to the settlement of the Reese Claim.

60.   Despite the fact that no underlying aggregate applies to the automobile liability coverage afforded by the ACE Primary Policy, AAIC refused to contribute any amount of its $3 million per occurrence limit to the settlement of the Goulding Claim.

61.   Despite the fact that no underlying aggregate applies to the automobile liability coverage afforded by the ACE Primary Policy, AAIC has taken the position that the AAIC Umbrella Policy is exhausted with respect to automobile liability claims arising out of accidents that occurred during the November 1, 2003 to November 1, 2004 policy period.

62.   American Guarantee has reserved its right to deny coverage for the James Claim, New Claim, and Thorton Claim, in part, based on the potential applicability of Section V.B. of the American Guarantee Excess Policy, which states that in the event of AAIC's refusal to pay, the insurance afforded by the American Guarantee Excess Policy "will not replace [AAIC's] underlying insurance, but will apply as if all the limits of [AAIC's] underlying insurance is fully available and collectible."

63. In the event the Kleparek Claim exceeds the ACE Primary Policy's $2 million each accident limit and AAIC refuses to pay any amount of its $3 million per occurrence limit, Section V.B. of the American Guarantee Excess Policy would potentially apply.

64. An actual controversy exists between American Guarantee, AAIC, and Republic regarding whether the AAIC Umbrella Policy's $3 million general aggregate limit applies to the automobile liability coverage afforded by the ACE Primary Policy.

65. Because no underlying aggregate applies to the ACE Primary Policy, American Guarantee is entitled to a declaratory judgment in its favor, pursuant to 28 U.S.C. § 2201, declaring that the AAIC Umbrella Policy's $3 million general aggregate limit does not apply to the automobile liability coverage afforded by the ACE Primary Policy.

### SECOND CLAIM FOR RELIEF
(Equitable Subrogation - AAIC)

66. American Guarantee incorporates and realleges paragraphs 1 through 65 as if fully set forth herein.

67. AAIC breached its contractual obligations to Republic under the AAIC Umbrella Policy by refusing to contribute its entire $3 million per occurrence limit toward the settlement of the Reese Claim and refusing to contribute any amount toward the settlement of the Goulding Claim.

68. As a result of AAIC's breach of its contractual obligations to Republic, American Guarantee contributed $1,460,833.72 toward the settlement of the Reese Claim and $1.5 million toward the settlement of the Goulding Claim which should have been paid by AAIC.

69. American Guarantee contributed $1,460,833.72 toward the settlement of the Reese Claim and $1.5 million toward the settlement of the Goulding Claim to protect its own interests as well as the interests of Republic.

70. American Guarantee was not acting as a volunteer when it contributed $1,460,833.72 toward the settlement of the Reese Claim and $1.5 million toward the settlement of the Goulding Claim.

71. As a result of American Guarantee's contributions of $1,460,833.72 toward the settlement of the Reese Claim and $1.5 million toward the settlement of the Goulding Claim, American Guarantee stands in the shoes of Republic and is subrogated to Republic's claims against AAIC with respect to AAIC's breach of its contractual obligations.

72. Subrogation of Republic's rights against AAIC would not work any injustice to the rights of a third party.

73. As the equitable subrogee of Republic, American Guarantee is entitled to an award of damages resulting from AAIC's breach of its contractual obligations.

### THIRD CLAIM FOR RELIEF
### (Conventional Subrogation - AAIC)

74. American Guarantee incorporates and realleges paragraphs 1 through 65 as if fully set forth herein.

75. AAIC breached its contractual obligations to Republic under the AAIC Umbrella Policy by refusing to contribute its entire $3 million per occurrence limit toward the settlement of the Reese Claim and refusing to contribute any amount toward the settlement of the Goulding Claim.

76. As a result of AAIC's breach of its contractual obligations to Republic, American Guarantee contributed $1,460,833.72 toward the settlement of the Reese Claim and $1.5 million toward the settlement of the Goulding Claim.

77. Pursuant to Section I.B. of the American Guarantee Excess Policy and Section V.K. of the AAIC Umbrella Policy, American Guarantee has the rights of Republic as against AAIC for breaching its contractual obligations to Republic.

78. As the subrogee of Republic, American Guarantee is entitled to an award of damages resulting from AAIC's breach of its contractual obligations.

## PRAYER

WHEREFORE, American Guarantee prays the Court enter judgment in its favor and against Defendants as follows:

A. On the First Claim for Relief, declaring that the AAIC Umbrella Policy's $3 million general aggregate limit does not apply to the automobile liability coverage afforded by the ACE Primary Policy;

B. On the Second and Third Claims for Relief, awarding American Guarantee damages against AAIC in the amount of $2,960,833.72, plus prejudgment and postjudgment interest; and

C.      Awarding American Guarantee such other and further relief as allowed by law or equity or otherwise appropriate in the circumstances, together with its costs and expenses.

Dated this 12th day of February, 2010.

*Counsel for Plaintiff American Guarantee*

McIntosh, Sawran, Peltz & Cartaya, P.A.
1776 East Sunrise Blvd.;
P.O. Box 7990
Fort Lauderdale, FL 33338-7990
Tel.: (954) 765-1001; Fax: (954) 765-1005


By:     /s/ Robert C. Weill
        Douglas M. McIntosh
        Florida Bar No.: 325597
        dmcintosh@mspcesq.com
        **Robert C. Weill**
        **Florida Bar No.: 009962**
        **rweill@mspcesq.com**

13